Good morning, ladies and gentlemen. Welcome to the Ninth Circuit. Judge Fischer, who is on the screen, and I are honored to welcome our colleague, Judge Larry Pearsall, who is sitting with us by designation from the District of South Dakota. So he adds an exotic element to our hearing today. We have five... And the board die! Indeed. Indeed. We have five cases for argument this morning. The first of which is Gilberg v. California Check Cashing Stores. So, counsel, if you'd like to proceed, whoever is going first. Good morning. Good morning, Your Honors. H. Scott Leviant on behalf of the plaintiff and appellant, and I'm going to endeavor to reserve about three minutes for rebuttal. We'll try to help you, but watch the clock, please. Thank you very much, and a big shout-out to my huge YouTube following. Since the court, like I presume all courts, would begin with the admonition that you've read the briefs and you're familiar with the content, rather than repeating that, I want to try to emphasize just a few points that I think are the most critical and expand a little bit on an issue that was touched on briefly in the reply, but since that time and with further consideration, I've had time to think a bit more of.  The issue of whether the employment application itself, separated in time from the document called the disclosure, is somehow distinct from the FCRA page called the disclosure and therefore doesn't need to be discussed. And I think it's clear. With respect to counsel, to that point, the employment application's got different pagination, the font is different, the design is different, it was executed at a different time. How can you say that that is one and the same with the disclosure statement? Well, that's what I'd like to elaborate on. I think it's actually a different disclosure. At the end of that employment application, there is language that is unambiguously language that a typical consumer is going to view as of a kind with the language that's in the separate disclosure form that was addressed. What do you mean by that? It indicates there's going to be a background check done. It contains some of the same language that's in the disclosure talking about your educational history, criminal history, those types of things. It contains the same laundry list of information and it says you may be subject to a background check. If it is, what difference does that make? The question is you've got one document that's denominated a disclosure statement that has the kinds of things that you've indicated and the fact that the employment agreement is duplicative in some aspects but has a different type, different date, different font, everything. The issue is that there is no clear retraction of that document as a disclosure. It contains release language. It lacks information that needs to be in there to be a compliant disclosure. So we have one active document that has characteristics of appearing to be a disclosure and for the purpose of clarity, a clear and conspicuous disclosure, the employer never says, you know, that language in our application, that sort of boilerplate and we're not going to rely on that or assert that against you or use that. This is the active document. That communication never occurs. And so when you have two live documents. With respect, counsel, it seems to me what you're saying is that no matter what these folks put in a disclosure statement or an employment statement, it has language in it that might confuse a regular person. Therefore, it's all going to be treated as one. How would you avoid that given your construction of this language? I think you avoid that by doing what I said, which is you indicate that you are not relying on any language other than one particular form. You have multiple documents. Do you have big red arrows and point to the other one and say we're not relying on this? Is that what you do? I think that's the only way you cure it when you put two live forms in play that both have background check language in them and the statute itself requires a standalone disclosure and the second part of the requirement is that clearly and conspicuously provides that disclosure. You've created confusion simply by activating two live forms. Now, if we push the employment application to the side, don't look at it at all and focus only on the document that's called the disclosure, that form on its face fails to satisfy the requirements that this circuit has already clearly articulated in the Syed case when it said the term solely is not an ambiguous term in the statute. It is a commonly used word and this disclosure doesn't contain solely the FCRA disclosure. It contains information about New York and Oklahoma and California, a whole variety of other information. It contains an acknowledgment of receipt of other documents, which I believe is an exculpatory type of provision. If you ask a person to acknowledge receipt of documents and swear that you have read and understand them, you are effectively eliciting something akin to a release from the person. That's what they dealt with in Syed, right? Well, the full release is what they dealt with in Syed, but if you attempt to distinguish Syed from this case, you will be generating an intra-circuit split because to distinguish the release from the issue. That would be terrible because the Ninth Circuit never does that. Yes, that would be terrible, Your Honor. We would have to go to en banc review to clear up that. That would be awful. Intra-circuit split, and that means you guys would have to hear about this twice. Oh, no. Nothing would be more boring than hearing about FCRA bankruptcy. I wouldn't, though. He wouldn't. He's lucky. Okay, so one of you would skate. Two of you would be punished having to hear about this twice. But the issue then would be that the analysis that underlies Syed would be undermined because they didn't get to the release provision until they had construed the solely provision under the FCRA. Let me ask you this, counsel. You undoubtedly could articulate a number of things. You're almost out of your three minutes. It's up to you. But what's your best argument? You've marshaled a number of different points, but what is it you want us to take to bed tonight and be thinking about in this wonderful case? I think the solely requirement is the number one most important requirement, and the close second is the facial construction of this form violates the clear and conspicuous requirement because of the extraneous language and the small font size. But I would say that the solely requirement is headline number one. That's the reason the court should be reversed. Do you want to save some rebuttal time? I'll save that time for rebuttal. Thank you, Your Honor. Okay. Very good. Counsel? Good morning. Tim Snyder on behalf of the defendant, appellee. This case is really about whether Syed extends to the type of standalone page disclosure that's at issue in this case. It really doesn't meet the solely requirement, does it, counsel? I'm sorry? It really doesn't meet the solely requirement, does it? I have difficulty seeing how, when you look at the requirements of Syed, we can treat that document as being solely or dealing solely with the disclosure. Well, I think we can all agree that this document doesn't contain a liability release. Correct. And that's the issue of first impression that the Syed court said it was deciding. And so the question is, does the word solely, singly, entirely, you can add whatever adjective or synonym that you want, whether this meets that. And I would say it does. And the reason is, is everything in this document relates solely to a single transaction, which is an employer requesting permission to obtain a background check report. Everything in here is about that. There's nothing out of left field like a release or a liability waiver. This is detailed information about the consumer's rights. And that's what distinguishes this from Syed, because in Syed the court said, what's the purpose of this standalone disclosure? The purpose is to focus the consumer on the fact that they have privacy rights. This disclosure does that. In fact, I don't think we'd be having this argument if this disclosure just said a single sentence, which is the first sentence of the disclosure, that a consumer report may be obtained for employment purposes. What about the fact that this goes on through your employment? This isn't just to get a job. It goes on throughout the course of your employment. The authorization does. That's true. And that's not been something that anybody's complained about. I think it's very commonplace to get an authorization and a continuing one throughout the employment relationship. So that more goes to the authorization as opposed to the disclosure. There's two separate requirements. And what about all of the different state disclosures? You know, instead of having a separate document for a state or maybe even limiting it just so that you have different forms to use, one that just deals with somebody being getting employed in California as opposed to somebody getting employed in some other state. So these other states have what I'll call mini-FCRAs. And what they do is they supplement the Federal Fair Credit Reporting Act. But if you look at what's being said about those other states' laws, they're all on the same topic, which is you have rights when an employer asks for permission to obtain a consumer report. And it's called out very clearly. New York, Maine applicants in bold underlined. That doesn't render this inconspicuous or hard to read. Somebody from California, say, would hit that bullet point and move on. But if they were to read it, they would read about their rights in those states, which frankly match the rights under the Fair Credit Reporting Act, to obtain a copy of the report, to obtain to have the ability to potentially correct that information. I'm sorry. You look like you're going to ask a question. But under Syed, can you even have the state disclosures mixed in with the Federal requirements? So we know from Syed you can't have a liability waiver. And the reason you can't is that undermines the purpose of this notice, because as the Syed court explained, a liability waiver draws the applicant away from the rights they have to the rights they have to give up. And this disclosure doesn't do that. Everything in here is explaining consumer rights related to a single transaction, whether the consumer will consent to obtaining a consumer report. So it's very different. And I would and I do argue, and I will argue, that because this all relates to that single transaction, it doesn't violate. Solely says we also hold that the disclosure document must consist solely of the FCRA is willful when it goes on. And so it doesn't say that it can also contain the state disclosure requirements also. That's what it totally says. Well, it doesn't. And that wasn't the issue before that court, whether state disclosures would render it a violation. We cited the court to a decision from the central district called Noori, in which that district judge, like the district judge in this case, said, look, closely related disclosures that are not liability waivers, that aren't out of left field, so to speak, that focus the consumer's attention on the rights that they have, don't undermine the congressional purpose here. And so this is very different from Syed, in which the Ninth Circuit actually reached out and held that there was a willful violation there, because a liability waiver was so not consistent with the congressional purpose that Syed found a willful violation as a matter of law. What I'm concerned about with is, Syed did talk about the limited liability waiver, but in this case here, and it's just some notes I have, this document has statements about state laws that were inapplicable to Gilbert, has statements about California state law that were inapplicable to Gilbert under the FCRA, has statements about federal law that are inapplicable under ICRAA, and references to two other side documents that are not relevant here either. I guess it really boils down to how we read the word solely. Obviously the Syed court focused primarily on the waiver, the liability waiver. But I guess we have to divine what Congress intended here. I mean, the reality is they wanted it to be as simple as possible. None of these documents is simple to anybody, but a reasonable person can look at them. And the question is, what does the word solely mean here? I mentioned four things here, in addition to what they had in Syed, that seemed to me to really stretch that boundary. What's your comment about that? Well, what I would say is because all of that so-called surplusage relates to consumer rights in the context of obtaining a consumer report for employment purposes, this disclosure solely relates to that transaction. Could you take out the New York and Maine disclosure and would it still be compliant? Yes, you could. But does adding that additional information that explains and impresses upon the consumer, the importance of this decision and the rights that they have, does that violate the congressional purpose behind this sole document disclosure? What about the notice regarding background investigation? How does that fit? So you're referring to the authorization paragraph. Okay. So there in the acknowledgement piece, what I would say is an acknowledgement that you have read a document. And by the way, the notice regarding background investigation is simply the above paragraph. They're acknowledging that they received and read the above paragraph. And then the summary of your rights under the Fair Court Reporting Act is ER 194 through 95. And that's a document created by the Federal Trade Commission, which explains what your rights are as a consumer to correct information in your consumer. At least those particular items are merely repetition of what the government has already said elsewhere. Exactly. They're not distracting. They're not pulling away. And in fact, I would argue that the acknowledgement itself is impressing upon the applicant the importance of this decision, which is fully in line with Syed. One more comment on Syed is that the court there found a willful violation. Now, in this case, the district judge never got there because we were focused on whether there was a violation at all. But Your Honor, recently in the Shaw versus Experian case, found no violation, but then went on to say if there was a technical violation, it's not a willful violation as a matter of law. And certainly, if this court was troubled by the additional, frankly, pro-consumer information in this disclosure, I think that this court could affirm on the alternative grounds that maybe there is a technical violation here, but that that violation is not, what's the word, not objectively unreasonable, not so out there as to constitute a willful violation. Because in this case, the plaintiff at ER 10 and 11 has acknowledged she's not seeking actual damages  She's seeking statutory damage, which you only get if you show not only a violation, but that the violation is reckless or knowing. And if this missed the mark, I would submit it missed it slightly, technically, but not in a massive miss like the Syed case. Unless the Court has any further questions. Other questions by my colleagues? No, thank you, counsel. Thank you. Thank you. If this court wades into the terrain of attempting to fashion extra exceptions, it's undermining precisely what the Syed decision said. The statute is not written in a way that permits. The statute says the disclosure must be solely the FCRA disclosure in a clear and conspicuous document. And there is a single articulated exception to that. The same form that has the disclosure may have an authorization line that says, I authorize the background check. If I may, counsel, you articulated these issues well, both of you in your brief. But I want to follow up on a point your opposition mentioned. Do you concede that if, if in fact there was a failure to put something that was solely dealing with this down here, this is not an intentional thing. This is not a violation that should generate any liability resulting from some kind of scienter, is there? I think that given the language of the statute, the answer is yes. It would constitute a willful violation. The Syed court. Even if, even if, I mean, you're two very learned counsel here. You disagree strongly about what this word means. If two intelligent people have that disagreement, how can you penalize somebody having scienter when they have a different that this was an intentional violation of the law? Syed said this is the very first time anyone's addressing this solely requirement. And yet that court still found that it is so obvious on the language of the statute that the surplusage is a violation that it would constitute a willful violation. And no reasonable person could read the word solely and think that they're entitled to add extra information into the disclosure. The waiver referred to in Syed is of the same nature as the four, probably I could say six if you have the subparts added. Things that were added in here, at least according to your allegations. I think it suffers a similar defect in that the more material that's there and the more dense it is, the less clear it is to a typical consumer and the less likely they are to actually absorb what's there. I can tell you the best disclosure form I've ever seen was a piece of paper that had a big bold-faced label at the top saying it was an FCRA disclosure and about two inches worth of 12-point Times Roman font that said we're going to perform a background check and it's going to look at your character, reputation, education history, criminal history, and that's it. No authorization, no nothing. They put the authorization on another form, but that document screamed out when you got that piece of paper. You almost couldn't help but read that single two-sentence document. Perhaps you should offer yourself as a purveyor of such documents. They might be scooped up by anxious purchasers. As soon as someone starts writing the checks, I'll begin issuing those forms. There we go. Other questions by my colleagues? No. All right. Thank you, counsel. Thanks to both counsel. The case just argued is submitted.
judges: Fisher, M. Smith, Piersol